**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scottsdale Capital Advisors Corp.; Alpine Securities Corp.; John J. Hurry and Justine Hurry,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>Brian Jones,<br><br>　　　　　Defendant. | No. CV-12-127-PHX-LOA<br><br>**ORDER** |

　　　　　This matter is before the Court on *pro se* Defendant Brian Jones' ("Jones") Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. 12) Plaintiffs Scottsdale Capital Advisors Corp., Alpine Securities Corp., John J. Hurry and Justine Hurry (collectively "Plaintiffs") have responded in opposition to the Motion. (Doc. 14) Jones has not replied and the deadline has passed. All parties have consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (Docs. 11, 19) After consideration of the parties' briefing on the Motion and relevant legal authority, the Court will deny Jones' Motion to Dismiss.

**I. Introduction**

　　　　　On January 20, 2012, Plaintiffs filed this action, invoking this Court's federal-question jurisdiction pursuant to 28 U.S.C. § 1331. (Doc. 1, ¶¶ 17-18 at 3) Plaintiffs also assert subject-matter jurisdiction exists under 28 U.S.C. § 1332 because the parties' diversity of citizenship is adverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. (*Id.*, ¶ 19) Plaintiffs seek injunctive relief and a declaratory judgment under

the Federal Declaratory Judgment Act, 8 U.S.C. §§ 2201 and 2202, contending "a present, actual and justiciable controversy [exists] between Plaintiffs and Jones." (*Id.,* ¶ 17)  Plaintiffs request a preliminary and permanent injunction, prohibiting Jones from: (1) pursuing arbitration claims against Plaintiffs with the Financial Industry Regulatory Authority[1] ("FINRA"), and (2) initiating or prosecuting any new or additional claims against Plaintiffs other than in a court of competent jurisdiction. (*Id.* at 8; docs. 5, 15)  Jones moves to dismiss the complaint for failure to state a claim upon which relief can be granted, arguing the issue of arbitrability raised in the Complaint is within the exclusive province of the FINRA arbitrator, not this District Court. (Doc. 12 at 2)

## II.  Background

Jones represents he is the owner of Wisecity Ltd. and a resident of Wellington, Sommerset, United Kingdom. (*Id.*)  On October 21, 2011, Jones filed a Statement of Claim[2] against Plaintiffs with FINRA, asserting that he is the victim of identity fraud, and alleging a claim that "sounds in negligence" against Plaintiffs. (Docs. 1, ¶¶ 31, 35; 5-1, Exh. 8 at 101-105)  Jones alleges in his Statement of Claim that someone stole his identity, opened an account at Scottsdale Capital Advisors, using false information and authorized the selling of 50,000 shares of Argentex Mining Corporation ("AGXM.OB") without Jones' knowledge or permission. (*Id.*, ¶¶ 10-13)  Jones alleges he "[d]id not authorize, approve or desire [Plaintiffs] to take [the] action[]" they did, and he "[d]id not receive <u>any</u> of his rightful proceeds from the liquidation of [the AGXM.OB] securities." (*Id.*, ¶¶ 11-12) (emphasis in original).  Jones seeks to arbitrate his

---

[1] FINRA, formerly the National Association of Securities Dealers, Inc. ("NASD"), is a not-for-profit corporation registered with the Securities and Exchange Commission as a national securities association created under the Maloney Act amendments to Section 15A of the Securities Exchange Act of 1934. *See Morgan Keegan & Co. v. McPoland*, 2011 WL 6326956, * 5 n. 1 (W.D.Wash. Dec. 6, 2011).  The NASD Code of Arbitration was the predecessor to the FINRA Code. *Id.*

[2] Though the parties did not file a copy of Jones' Statement of Claim with their briefing on Jones' motion, it is a part of the record as an exhibit to Plaintiffs' Motion for Preliminary Injunction. (Doc. 5-1, Exh. 8 at 101-105)  Jones does not dispute the authenticity of this exhibit.

1  claims against Plaintiffs before FINRA (the "Arbitration Action"). To prevent the Arbitration
2  Action from proceeding, Plaintiffs filed a complaint, seeking declaratory relief and arguing
3  Jones has no right to arbitrate his claim because, by his own admissions, he was not Plaintiffs'
4  customer. Plaintiffs also seek a permanent injunction, requiring Jones to dismiss the claim he
5  filed with FINRA.  Plaintiffs argue that they are not subject to FINRA arbitration with Jones
6  because he was not their customer and they did not sign an arbitration agreement with him.

7  Jones moves to dismiss the Complaint and compel arbitration on the ground that
8  Plaintiffs agreed to arbitrate his claims because, at the time of the transaction at issue,
9  "[P]laintiffs was (sic) a broker/dealer registered with FINRA." (Doc. 12, ¶ 3 at 2) Jones further
10 argues that Plaintiffs are "bound" by FINRA's customer arbitration code and that, whether
11 Jones was a customer for purposes of the FINRA is an issue for the FINRA arbitrator to decide,
12 not this Court. (*Id*. at 4) Finally, Jones argues that FINRA's rules prohibit Plaintiffs "[f]rom
13 filing a court action to decide issues that are properly before FINRA arbitrators." (*Id*. at 5)

14 **III.  Legal Standard**

15 Jones moves for dismissal under Federal Rule of Civil Procedure 12(b)(6). "Although
16 a party seeking to enforce an agreement to arbitrate typically does so by filing a motion to
17 compel arbitration, courts have recognized that a party may choose instead to bring a motion
18 to dismiss under FRCP 12(b)(6)." *Beauperthuy v. 24 Hour Fitness USA, Inc*., 2006 WL 931756,
19 * 2 (N.D.Cal. April 11, 2006 ) (citing *Sparling v. Hoffman Construction Co. Inc*., 864 F.2d 635,
20 637-38 (9th Cir. 1988)).  In deciding whether to grant a motion to dismiss, a court must accept
21 as true all "well-pleaded factual allegations in the complaint as true, [but courts] are not bound
22 to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S.
23 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal
24 quotation marks omitted)).  A court is not "required to accept as true allegations that are merely
25 conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden
26 State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

27 When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers
28 evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56

motion for summary judgment, and it must give the non-moving party an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003) (citing Fed.R.Civ.P. 12(b); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n. 4 (9th Cir. 1998)). A district court, however, may consider certain materials, such as, documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id.* at 908 (citations omitted). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (citations omitted). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* This "incorporation by reference doctrine" has been extended "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Moreover, "[i]n federal courts, notice may be taken of facts relating to the particular case . . . where the fact is 'not subject to reasonable dispute,' . . . or is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"). *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir. 1992) (citing Fed.R.Evid. 201(b)).

Usually, a motion to compel arbitration is decided according to the standard used by courts in resolving summary judgment motions pursuant to Rule 56, Fed.R.Civ.P. *See Coup v. Scottsdale Plaza Resort, LLC*, 823 F.Supp.2d 931, 939 (D.Ariz. 2011) (citing *Craft v. Campbell Soup Co.*, 177 F.3d 1083, 1084 (9th Cir. 1999), *abrogated on other grounds*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Perry v. Northcentral University, Inc.*, 2011 WL 4356499, \* 3 (D.Ariz. Sept. 19, 2011) (citations omitted)). "If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement

should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc*., 925 F.2d 1136, 1141 (9th Cir. 1991) (citation omitted).

If there exists a genuine dispute of material fact, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the non-moving party, a jury must decide the issue. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material. *Anderson*, 477 U.S. at 248; *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. In determining whether to grant or deny summary judgment, the district court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits. Fed.R.Civ.P. 56(c)(1).

**IV. Arbitration**

   **A. The Federal Arbitration Act**

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving transactions in interstate commerce. 9 U.S.C. § 1. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." *Id*. at § 2. The FAA's provisions manifest a "liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, ___, 131 S.Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983)). "If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA)*, 560 F.3d 935, 940 (9th Cir. 2009) (citing *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1276-77 (9th Cir. 2006) (*en banc*); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (citing Ninth Circuit precedent, Title "[9] U.S.C. section 3 gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause." ).

"In enacting the FAA, Congress 'declared a national policy favoring arbitration' that was intended to reverse centuries of judicial hostility to arbitration agreements." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). The FAA mandates federal courts "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Samson*, 637 at 934 (quoting *Byrd*, 470 U.S. at 218, and citing 9 U.S.C. §§ 3, 4) (emphasis original)).

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration" *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995) (citations omitted). "While ambiguities in the language of [an] agreement should be resolved in favor of arbitration, [courts] do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002) (citation omitted). "In deciding these questions, federal courts must 'place arbitration agreement[s] on equal footing with other contracts.'" *Samson*, 637 F.3d at 924 (quoting *Waffle House*, 534 U.S. at 293). "Thus, to evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Id.* (citations and internal quotation marks omitted). A party seeking to compel arbitration has the burden of showing that an agreement to arbitrate exists. *See e.g.*, *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007); *Three Valleys Mun. Water Dist.*, 925 F.2d at 1139-41; *Guadagno v. E\*Trade Bank*, 592 F.Supp.2d 1263, 1270 (C.D.Cal. 2008) (citation omitted).

**B. Arbitrability**

Despite the strong policy favoring arbitration, the U.S. Supreme Court has held that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'" *Howsam v. Dean Wittier Reynolds, Inc.*, 537

U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrier & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)); *see also Samson*, 637 F.3d at 934. Whether the parties have agreed to submit a matter to arbitration is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 79; *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

**V. Analysis**

   **A. FINRA Rules 12200 and 12413**

The FINRA Code (the "Code") governs FINRA arbitrations. *See* www.finra.org. "FINRA is a 'self-regulatory organization' under the Securities and Exchange Act." *Sacks v. Dietrich*, 663 F.3d 1065, 1067 n. 1 (9th Cir. 2011) (quoting *Sacks v. Securities and Exchange Commission*, 648 F.3d 945, 948 (9th Cir. 2011) (explaining FINRA's role and rule-making process). "FINRA's rules are approved by the Securities and Exchange Commission . . . ." *Id.* There is no dispute that Plaintiffs are FINRA members. (Doc. 14 at 4) The Code, however, is not dispositive of whether FINRA has jurisdiction over Jones' claim. As FINRA members, Plaintiffs are required to arbitrate disputes only where (1) Plaintiffs have contractually agreed to arbitrate with a claimant, or (2) the claimant is a customer of Plaintiffs. *See World Group Securities, Inc. v. Allen,* 2007 WL 4168572, at * 2 (D.Ariz. Nov. 20, 2007) (citing FINRA Rule 12200) (finding "[t]he terms of the arbitration clause unambiguously evidence the parties' intent to arbitrate all disputes concerning the accounts, which necessarily includes the successor-liability claims."). Rule 12200 of the Code permits a "customer" to compel arbitration of a dispute "between a customer and a member" that "arises in connection with the business activities of the member."[3] *Id.* Jones does not assert that there is contractual agreement to

---

[3] Rule 12200 of the Code is an amended version of former Rule 10301 that took effect on April 16, 2007. Cases interpreting and applying Rule 10301 apply equally to Rule 12200 because the amendment did not make any substantive changes to the rule. *Herbert J. Sims & Co., Inc. v. Roven*, 548 F.Supp.2d 759, 763 n. 2 (N.D.Cal. 2008) (citing Comparison Chart of

arbitrate between Plaintiffs and Jones. Thus, to determine whether an alternative basis for a right to arbitrate exists, the Court must analyze whether Jones qualifies as a customer of Plaintiffs. Jones argues that whether he was Plaintiffs' customer is an issue for the FINRA arbitrator to decide, and therefore, the Court should dismiss this action. (Doc. 12 at 4) The Court disagrees.

Although courts may give considerable deference to arbitrators in resolving matters related to a dispute that is subject to arbitration, whether a dispute is subject to arbitration in the first instance is a judicial function.

> A threshold question the parties dispute is whether the Court should defer to the arbitration panel to determine whether Royal Alliance is bound to arbitrate Branch Avenue's claims. Normally, courts give considerable deference to arbitrators in resolving matters related to a dispute that is subject to arbitration. However, when, as here, "there is a question regarding whether the parties should be arbitrating at all," *Dockser v. Schwartzberg*, 433 F.3d 421, 426 (4th Cir. 2006), courts do not defer to arbitrators. Rather, the Supreme Court has stated unambiguously that "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (emphasis added) (internal quotation marks omitted).

*Royal Alliance Associates, Inc. v. Branch Avenue Plaza, L.P.*, 587 F.Supp.2d 729, 734 (E.D.Va. 2008).

Under FINRA Rule 12413, now Rule 12409, a FINRA arbitrator or arbitration panel[4] "has the authority to interpret and determine the applicability of all provisions under the Code," and "such interpretations are final and binding on the parties." *Royal Alliance,* 587 F.Supp.2d at 735 (quoting FINRA Rule 12413[5]). While the Ninth Circuit Court of Appeals has not yet

---

Old and New NASD Arbitration Codes for Customer Disputes, Rule 12200, www.finra.org.)

[4] FINRA Rule 12401 discusses the criteria for one or three arbitrators to decide a dispute under FINRA.

[5] Jones filed a copy of FINRA's Code of Arbitration Procedure for Customer Disputes with his Motion to Dismiss. (Doc. 12 at 9-67) Rule 12413 has been renumbered to Rule 12409. FINRA Rule 12409 provides FINRA arbitrators with the "authority to interpret and determine the applicability of all provisions under the [FINRA] Code [of Arbitration Procedure]." The parties agree on the substance of this Rule although it is not clear when the number changed

- 8 -

addressed the scope of this Rule, a majority of circuit courts have held FINRA's rules do not evidence a clear and unmistakable intent that the issue of arbitrability should be submitted to an arbitrator. *See Waterford Inv. Services, Inc. v. Bosco*, 2011 WL 3820723, * 5 (E.D.Va. July 29, 2011) ("[W]hile the Fourth Circuit has not considered the scope of Rule 12413, the majority of the Courts of Appeals that have considered this issue have held that this [Rule's] broad language, by itself, does not clearly and unmistakably empower arbitrators to determine the question of arbitrability.") (quoting *Royal Alliance*, 587 F.Supp.2d at 735 and citing *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 55 (2d Cir. 2001) (holding that one party's membership in NASD, and the resulting requirement that it adhere to Rule 12413, does not clearly and unmistakably submit questions of arbitrability to arbitrators); *Miller v. Flume*, 139 F.3d 1130, 1134 (7th Cir. 1998) (holding that the subject rule does not constitute a clear and unmistakable grant of power to arbitrators to decide questions of arbitrability); *Smith Barney, Inc. v. Sarver*, 108 F.3d 92, 96-97 (6th Cir. 1997) (same); *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 384 (11th Cir. 1995) (same). *But see*, *FSC Secs. Corp. v. Freel*, 14 F.3d 1310, 1312, (8th Cir. 1994) (holding that this language is, in fact, "clear and unmistakable"); *PaineWebber Inc. v. Elahi*, 87 F.3d 589, 601 (1st Cir. 1996) (noting that the language in this rule "strongly undercuts" arguments that a separate section of the NASD rules was an arbitrability issue that should be decided by courts and not arbitrators)); *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (recognizing that the "NASD Code does not evidence a 'clear and unmistakable' intent to submit the issue of arbitrability to arbitrators where only one party is a NASD member and the parties do not have a separate agreement to arbitrate," and that the issue of arbitrability is for the court to decide.).

The Court finds Jones' reliance on *O.N. Equity Sales Company v. FINRA Dispute Resolutions, Inc.*, 2008 WL 281788 (S.D. Ohio Feb. 1, 2008) is unavailing. *O.N. Equity Sales* is an unpublished decision from the Southern District of Ohio, and thus has no precedential

---

from Rule 12413, now non-existent under the Code, to Rule 12409. *See* www.finra.org. (last visited on May 14, 2012)

- 9 -

value in the District of Arizona and is unpersuasive. The *O.N. Equity* court's conclusion that whether a claimant is a "customer" under FINRA's rules is a procedural issue for the arbitration panel is unsupported and conflicts with several cases from district courts within the Ninth Circuit that conclude the issue of whether a claimant is a customer within FINRA's rules is a judicial one. *See Morgan Keegan & Co. v. McPoland*, ___ F.Supp.2d ___, 2011 WL 6326956, * 3 (W.D.Wash. Dec. 6, 2011) (noting that "[w]hile the Ninth Circuit Court of Appeals has not yet addressed the question, a number of district courts in this circuit . . . have found that individuals who purchased Morgan Keegan funds from third-party broker-dealers are not "customers" within the meaning of FINRA Rule 12200, and cannot compel arbitration.") (citing *Morgan Keegan & Company v. Jindra*, 2011 WL 5869586 (W.D.Wash., November 22, 2011); *Morgan Keegan & Company, Inc. v. Shorthouse*, C11–5734BHS, Dkt. # 38 (W.D.Wash., November 22, 2011); *Morgan Keegan & Company, Inc. v. Drzayick*, 2011 WL 5403031 (D.Idaho, Nov. 8, 2011); *Herbert J. Sims & Co. v. Roven*, 548 F.Supp.2d 759 (N.D.Cal. 2008) (finding "that Plaintiff has a probability of success of showing that the relationship between Defendants and Plaintiff was too tenuous to establish a customer relationship and compel arbitration.")).

After consideration of this issue, this Court will follow the majority view that FINRA's rules do not "clearly and unmistakably" grant arbitrators the authority to determine questions of arbitrability. The Court agrees with the analysis in *Royal Alliance* that "Rule [12409] is a general provision providing arbitrators with the power to interpret their own rules. It does not address issues of arbitrability at all, let alone do so 'clearly and unmistakably.'" *Royal Alliance*, 587 F.Supp.2d at 735 (quoting *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) (holding that "[t]he 'clear and unmistakable' test . . . requires more than simply saying that the arbitrator determines the meaning of any disputed contractual terms")). Accordingly, the Court will decide the question of arbitrability that is raised in the Complaint and, thus, will deny Jones' Motion to Dismiss.

Under FINRA Rule 12200, a FINRA member must arbitrate a dispute if three requirements are met:

1. arbitration under the Code is either (a) required by a written agreement, or (b) requested by the customer;

2. the dispute is between a customer and a member or associated person of a member; and

3. the dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company. FINRA Rule 12200 (Doc. 12 at 19; *Royal Alliance*, 587 F.Supp.2d at 736)

"The FINRA rules do not precisely define who a 'customer' is, other than providing that a customer "shall not include a broker or a dealer." *Royal Alliance*, 587 F.Supp.2d at 736 (citing FINRA Rule 12100(i)). Jones recognizes this definition and acknowledges he "[w]as not a broker/dealer at the time of Plaintiff's (sic) made the transactions of selling Wisecity Ltd.'s 50,000 shares of AGXM.OB . . . ." (Doc. 12 at 4) Further, Jones has not alleged he was Plaintiffs' customer. To the contrary, he implies he was the victim of identity fraud by someone who stole his identity because Jones "[d]id not authorize, approve or desire [Plaintiffs] to [open an account and sell AGXM.OB stock]. (Doc. 5-1, Statement of Claim, ¶ 11 at 104) Jones alleges that

> On or about November 2nd, 2010, [Plaintiffs] opened, but not limited to, investment account (85711717) in the name of Wisecity Ltd and Brian Jones, utilizing false information such as, but not limited to, a false address, false signatures on the account opening documents, false blank statements, false 144 documentation, false subscription documents, false signatures on certificates and other such false documents for the purpose of establishing an account in which deposited stock certificates of an amount of fifty-thousand (50,000) shares of Argentex Mining Corporation, OTCBB symbol: AGXM.OB (may be referred to as the "Securities"). [Plaintiffs] dematerialized and liquidated securities into the over the counter market without the knowledge or permission of [Jones].

(*Id.*, ¶ 10) Because Jones does not claim he was a customer of Plaintiffs and, most clearly, has not created a genuine issue of material fact for jury determination with admissible evidence pursuant to Rule 56(c), Fed.R.Civ.P., whether he was a customer of Plaintiffs, Jones' Motion

- 11 -

to Dismiss will be denied.[6]

**B. FINRA Rule 12209**

Jones also argues that FINRA Rule 12209 prohibits Plaintiffs from bringing this action. Rule 12209 states that "[d]uring an arbitration, no party may bring any suit, legal action, or proceeding against any other party that concerns or that would resolve any of the matters raised in the arbitration." www.finra.org. (Doc. 12 at 23) Even though Jones' initiation of the Arbitration Action preceded the filing of Plaintiffs' complaint, the issues raised in Plaintiffs' Complaint would not resolve the legal claim Jones brings in the Arbitration Action for the reasons that this issue is a decision for a federal judge to make, not a FINRA arbitrator. The Court finds that Rule 12209 does not preclude Plaintiffs' action.

**VI. Conclusion**

Because the issue of arbitrability raised in the Complaint is properly before the Court, the Court will deny Defendant's Motion to Dismiss. The Court will also grant Plaintiffs' Motion for Summary Disposition and Request to Consolidate Motion for Preliminary Injunction with the Trial on the Merits, doc. 15, because Jones has failed to respond to Plaintiffs' Motion for Summary Disposition and Request to Consolidate Motion for Preliminary Injunction with the Trial on the Merits, doc. 15, and the Court has determined that Jones' claim(s) against Plaintiffs are not subject to FINRA arbitration. *See Morgan Keegan & Co., Inc. v. Louise Silverman Trust*, 2012 WL 113400 (D.Md. January 12, 2012) (granting plaintiff's Motion for a Preliminary Injunction).

Accordingly,

**IT IS ORDERED** that Defendant Brian Jones' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), doc. 12, is **DENIED**.

---

[6] In a footnote to which the Court gives no weight in its ruling herein, Plaintiffs allege "[u]pon information and belief, Jones knows who the purported identity thief is, but refuses to disclose the name of that individual. Jones knows this information because he willfully and knowingly provided this person with the personal identifying information, including the passport, stock certificate and purchase agreement, later used to open the account with [Plaintiffs] and effect the subject transactions." (Doc. 14 at 1-2 n. 3)

1 **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Disposition and Request to Consolidate Motion for Preliminary Injunction with the Trial on the Merits, doc. 15, are **GRANTED**. The arbitration proceedings between Plaintiffs and Jones before FINRA are **STAYED** pending the trial of this case or upon further order of the Court.

**IT IS FURTHER ORDERED** that, on or before **Tuesday, May 29, 2012**, Defendant Brian Jones must file an answer to Plaintiffs' Complaint pursuant to Rule 12(a)(4)(A) and include with it any compulsory counterclaim pursuant to Rule 13(a), Fed.R.Civ.P.

**IT IS FURTHER ORDERED** that counsel and any party, if unrepresented, must hereinafter comply with the Rules of Practice for the United States District Court for the District of Arizona ("Local Rules"). The Local Rules may be found on the District Court's internet web page at www.azd.uscourts.gov/. All other rules may be found as www.uscourts.gov/rules/.

Dated this 14th day of May, 2012.

Lawrence O. Anderson
United States Magistrate Judge